48 CCPA

**Application of Jacques SEJOURNET.**

**Patent Appeal No. 6622.**

United States Court of Customs
and Patent Appeals.

Jan. 13, 1961.

Joseph R. Robinson, Jr., Pittsburgh, Pa. (Spencer B. Michael, Washington, D. C., Morton Burden, Jr., Webb, Mackey & Burden, Pittsburgh, Pa., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

SMITH, Judge.

Both the examiner and the Board of Appeals denied claims to appellant on a method of extruding a composite steel billet. This appeal was taken as to all of the rejected claims but has been withdrawn except as to claims 6 and 7. In his brief appellant presented claim 6 as an "example" claim and rewrote it in the form of claim 1, upon which it was dependent, substituting the word "steel" of claim 6 for the word "metal" in claim 1, as follows:

"6. A method of extrusion, which comprises placing in a container having a die located adjacent one end thereof through which the billet is extruded, a composite steel billet heated to extrusion temperature and composed transversely of at least two thicknesses of different steels, and extruding the billet so as to produce in the different cross sections of the extruded article substantially the same relative thicknesses of the different steels as in the corresponding cross sections of the original billet, by providing, prior to extrusion, a layer of glass-like lubricating material between the end of the billet and the die, said glass-like lubricating material melting at least partially but remaining viscous during extrusion."

Claim 7 is similar to claim 6 except that it specifies the inner part of the composite billet as being low carbon steel and the outer part as being stainless steel.

It will be seen that the method of extrusion covered by the claims specifically relates to the extrusion of a composite steel billet composed transversely of at least two thicknesses of different steels, each having different physical characteristics and properties. This billet is heated to extrusion temperatures and placed in the container of an extrusion press. An extrusion die is located adjacent one end of the container. A layer of glass-like lubricating material is placed between the billet and the inside walls of the container and between the end of the

[1]. United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of* *Judge O'Connell*, pursuant to provisions of Section 294 (d), Title 28 U.S.C.

billet and the die. When the billet is extruded through the die, a product is said to be formed which has the different steels distributed in cross section in substantially the same relative thickness and proportion as they existed in a cross section of the composite starting billet. During extrusion, the glass-like lubricating material forms a viscous layer which acts as a lubricant between the billet and the die and between the billet and the inside walls of the container.

The problem in the art which appellant asserted was solved by his invention is summarized in his brief as follows:

"Prior to appellant's invention, extrusion as a method for fabrication of composite steel workpieces composed transversely of at least two thicknesses of different steels was seldom used due to extremely low yield of useable product. The low yield resulted from differential rates of metal flow which in turn caused substantial differences in distribution and proportion of the component steels in cross section between the workpiece and the product and from inability to predict the resulting distribution and proportion of the component steels in the product relative to those of the workpiece."

While the examiner relied upon twelve prior art references in finally rejecting the claims, the Board of Appeals affirmed the rejection upon the following three references:

| | | |
|---|---|---|
| Winston | 2,023,498 | December 10, 1935 |
| Phillips | 2,138,528 | November 29, 1938 |
| Sejournet et al. | 2,538,917 | January 23, 1951 |

———— ◆ ————

The Winston patent discloses a method for producing composite metal articles of magnesium and magnesium alloys. As shown in the patent, a magnesium alloy core is placed within a sheath of another magnesium alloy different in composition from the core metal and the core and sheath are extruded through the die without the use of any lubricant. The patent points out that in order to produce a composite extruded product having a continuous layer of sheath metal of uniform thickness overlaid upon the core metal, the core and sheath "are so shaped that as they are extruded through a common die opening, a continuous layer of uniform thickness will be produced upon the core metal in the extruded billet."

The Phillips patent relates to a method for manufacturing metal valves for internal combustion engines, which valves have a core of soft steel and a sheath of stainless steel. The valve shown in the drawings is a poppet valve which normally is less than 6 inches in length and its method of manufacture involves extruding a previously heated billet composed of a core of soft steel and a sheath of stainless steel through the die to form the valve without using any lubricant in the extrusion operation.

The Sejournet patent relates to a method of extruding from a container through a die located at one end thereof a heated single metal workpiece whose melting point is above 900°C. Prior to extrusion, a layer of glass-like lubricating material, which becomes viscous during the extrusion operation, is placed between the die and the heated workpiece and between the container and the heated workpiece to reduce friction between the workpiece and the die and between the container and the workpiece.

The claims stand rejected under 35 U.S.C. § 103 as being drawn to a method which was obvious from the disclosures of the prior art. The issue thus presented requires us to consider the claimed subject matter as a whole and to determine whether it would have been obvious at the time the invention was made to a

person having ordinary skill in the art of steel extrusion.

Appellant asserts primarily that the prior art patents neither teach nor suggest the method of extruding composite steel billets as set forth in the appealed claims. With respect to the patent of Sejournet et al., appellant contends that there is no basis for the assumption by the board that one skilled in the art would turn to that patent to improve the extrusion of a composite steel billet so as to produce an extruded product having the same proportions and distribution of the component steels as in the composite billet despite the different rates of flow of the component steels thereof through the die. Appellant also indicates that where each steel has a different resistance to deformation, it would be expected that the steel with a lower resistance to deformation would flow faster and extrude at a faster rate and that, even if lubricated with a glass-like material, it would reasonably be expected that the peripheral stainless steel sheath would flow at a slower rate than the plain carbon steel core. With respect to Phillips, appellant asserts that he merely shows the extrusion of small composite steel billets without the use of a lubricant.

At the oral argument, counsel for appellant admitted that at the time of making the invention in issue the extrusion of heated composite steel billets was old and that the use of a glass-like lubricant in extruding a single steel billet was old. Thus, the only feature of asserted novelty in the appealed claims lies in the use of a glass-like lubricant in extruding a composite steel billet, or as called for in claim 7 the extrusion of a composite steel billet having an inner part formed of low carbon steel and an outer part formed of stainless steel.

As pointed out by the Board of Appeals, appellant's method as claimed comprises but three steps, 1) placing a heated composite billet in an extrusion press, 2) providing a glass-like lubricant between the billet and the press and 3) extruding the billet.

All of the steps of the claimed method are taught by the Sejournet et al. reference except for the specific use of a composite billet. Sejournet et al.'s use of a glass-like lubricant for reducing friction between the billet, the container and the extrusion die permits the peripheral metal of the billet to flow more readily, and reduces the temperatures and pressures required to extrude the billet. The Sejournet et al. reference points out that this reduces deformity of the die, permits better control of product dimensions and the production of a smoother extruded article with improved yield.

While the Sejournet et al. reference does not describe the extrusion of composite billets specifically, the invention is illustrated and described for use with steel billets formed from a single type of steel. The disclosure in the description is broadly directed to the extrusion of metals and alloys of high melting point by the use of an effective glass-like lubricant between the billet and the metal container and between the billet and the extrusion die. Inasmuch as the extrusion of composite billets, especially composite stainless and carbon steel billets, was well known, as shown by Phillips, the concept of applying the method of Sejournet et al. to the composite stainless carbon steel billet of Phillips appears to us to be an obvious step within the skill of the art at the time the present invention was made.

The recitation in the appealed claims with respect to the relative thicknesses of the metals in the billet and in the extruded product is but the statement of a result of carrying out a method which we hold it would have been obvious to try in view of the teachings of the prior art. In re Kepler, 132 F.2d 130, 30 CCPA 726; In re Eisenhut, 245 F.2d 481, 44 CCPA 974.

In a case such as the present, we have the duty referred to by Judge Learned Hand in Kirsch Mfg. Co. v. Gould Mersereau Co., Inc., 2 Cir., 1925, 6 F.2d 793, 794: "Of divining as best we can what

the day to day capacity of the ordinary artisan will produce."

After reviewing the art cited here and after giving careful consideration to all of appellant's arguments we must, as Judge Hand did in the Kirsch case, fall back upon such good sense as we may have, and come to the "point where the question must be resolved by a subjective opinion as to what seems like an easy step and what does not. We must try to correct our standard by such objective references as we can, but in the end the judgment will appear, and no doubt be, to a large extent personal, and in that sense arbitrary."

 Our judgment is that the method here claimed is but an obvious adaptation of the Sejournet et al. process to the extrusion of the composite billets taught by Phillips.

Appellant, in seeking to avoid such a rejection of the claims, has emphasized what are asserted to be the new and unexpected results which have been achieved by the method called for in claims 6 and 7. This argument as stated in appellant's brief is as follows:

"The outstanding, new and unexpected results of the invention in issue together with the new function performed by glass-like lubricating material is convincing evidence of invention especially where extrusion is rendered feasible as a method for fabrication of composite steel billets for the first time. Thus, Sejournet's invention is that last step which converts failure into success."

In support of this position, appellant cites: Folberth Auto Specialty Co. v. Mayo-Skinner Mfg. Co., D.C.N.D.Ill. 1923, 292 F. 883, 890; Kelley et al. v. Coe, 1938, 69 App.D.C. 202, 99 F.2d 435, 440; Oliver United Filters, Inc. v. Silver, 10 Cir., 1953, 206 F.2d 658, 664, 667.

While we recognize the validity of the principles enunciated in these authorities, the rule is that commercial success is of no moment unless patentability is in doubt. In re Venner et al., 262 F.2d 91, 46 CCPA 754; In re Jaeger et al., 241 F.2d 723, 44 CCPA 767. Since we do not here find the question of obviousness a matter of doubt we find it unnecessary to consider the alleged commercial success as evidence of patentability of the claimed invention.

For the foregoing reasons, the decision of the Board of Appeals is affirmed.

Affirmed.