55 CCPA

**Application of Henry J. RYNKIEWICZ and Gilbert B. Ayres.**

**Patent Appeal No. 7894.**

United States Court of Customs and Patent Appeals.

Feb. 8, 1968.

Rehearing Denied April 11, 1968.

Samuel Branch Walker, Stamford, Conn., William P. Spielman, Washington, D. C., for appellants.

Joseph Schimmel, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before RICH, Acting Chief Judge, SMITH and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK [*].

ALMOND, Judge.

This is an appeal from the decision of the Board of Appeals affirming the examiner in finally rejecting claims 1–12 of appellant's application [1] entitled "Method of Opening Suture Packages." No claims were allowed.

The application relates to a method of opening plastic packages which contain wet-packed surgical sutures without compromising the sterility of the sutures.

This is accomplished by packaging the suture 3 in a plastic envelope 2. This envelope is dehydrated, sterilized, charged with a sterile conditioning fluid adapted to soften the suture, and then sealed. Under sterile conditions, the suture-containing envelope 2 is inserted into previously sterilized larger second envelope 5 which is then sealed by application of heat or use of adhesives. Figure 1 shows the completed package. The second envelope 5 is formed with ears or flaps 21, 22 in a manner so that the two sides may be grasped and pulled apart, thus presenting the inside suture-containing package to the surgeon in a completely sterile field (Fig. 8).

Figures 1 and 8 are reproduced below:

Fig. 1.

Fig. 8

Claim 1 is illustrative:

1. A method of serving surgical sutures in a sterile packet which comprises: stripping apart the two sheets between which the packet is sterilely sealed by a peripheral seal, retaining any contaminants present in location on the surface of the separated sheets, and peeling the sheets back from the packet whereby the packet is presented sterilely to a user.

[*] Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

[1]. Serial No. 197,742 filed May 25, 1962.

Claims 2 and 3 limit the type of suture material to a "non-boilable gut suture," recite the presence of a conditioning agent and define generically its composition, and define characteristics of the packet and outer envelope. Claims 4–12, additionally, include the steps of heat sealing and steps to release the inner packet containing the suture.

The references are:

| | | |
|---|---|---|
| Hirsch | 1,962,900 | June 12, 1934 |
| Waugh | 1,997,443 | April 9, 1935 |
| Whitefoot | 2,676,702 | April 27, 1954 |
| Ringlen et al. (Ringlen) | 2,751,074 | June 19, 1956 |

Hirsch discloses use of a double envelope in preserving sterility of surgical sutures, ligatures and dressings. The patent discloses that the envelopes are seamless tubes of transparent or translucent cellophane. It is stated that the outer envelope may be opened by tearing or clipping without harming or destroying the inner envelope which is clearly visible to the operator. It is further stated that the outer envelope having been torn or clipped:

* * * the inner envelope is still maintained in a sterile condition * * and may be partially shaken from the opened outer envelope and the doctor with his sterile gloved fingers may then grasp the projecting end of the inner envelope and remove * * * the suture * * *.

Waugh relates to packages for sterile surgical cord that can be used as a ligature or suture. The packets are constructed of a porous glassine type paper, and are retained in antiseptic condition by continuous immersion in a germicidal liquid.

Whitefoot discloses an envelope containing bandages, gloves or like material maintained in sterile condition. The envelope is provided with ears or flaps which may be grasped and pulled apart along a side seam to separate the walls of the envelope to present the sterile contents.

Ringlen relates to a hermetically sealed foil package containing a surgeon's blade, the object of the invention being to open the package and remove the contents without requiring manual contact with the contents of the package. The package or envelope is composed of front and back sections adhered to each other at the margins by adhesive. Opening of the envelope is accomplished by pulling apart end tabs to separate the two halves of the envelope along the adhesive seam, thus to expose the contents. It is stated that the "invention is not limited to a surgeon's blade but may be used for packaging other articles."

The examiner, applying the provisions of 35 U.S.C. § 103, rejected all of the instant claims over either Whitefoot or Ringlen in view of Hirsch. He pointed out the disclosure in Hirsch of a sterilized suture package containing a suture in an inner envelope which, in turn, is positioned within a larger outer envelope. The examiner noted that both Whitefoot and Ringlen disclose a sterilized surgical package with two sides comprising a pair of pull tabs to facilitate opening by stripping down or a peeling action. This, he observed, is the same procedure by which appellants open their package. The examiner referred to the Ringlen specification wherein it is stated that

When the blade is ready to be used, the protrusion is grasped and pulled until the free end tabs are exposed. These are grasped and the two sections are separated. [Numerals omitted.]

Through this opening procedure the blade is exposed so that the blade may be "attached to a handle *without manual*

*handling of the blade.*" [Emphasis quoted.]

The examiner concluded this phase of his rejection with the observation that:

> In view of the teaching of Hirsch, it would be obvious to one of ordinary skill in the art to package the surgical equipment in either Whitefoot or Ringlen et al. in an inner container having a sterilizing aqueous solution. Once Whitefoot and Ringlen et al. are modified in light of Hirsch it immediately becomes apparent that not only is applicants' package presented *but also his method of opening the package.* The use of alcohol as a sterilizing agent is well known in the suture art as shown * * * by * * * Waugh. [Emphasis supplied.]

The examiner also rejected all of the claims "as being drawn to an unpatentable method," observing that they "recite nothing more than the obvious manner of making and opening or using applicants' package."

We agree with the solicitor that the board, in reviewing the examiner's rejection, considered the rejection based on 35 U.S.C. § 103 and the rejection as an unpatentable method together, as appears manifest from the following observation made by the board:

> The rejection of all claims as drawn to the obvious or unpatentable method of making and opening appellants' package; and the rejection on art, appear to us to have the same force and to be properly considered together. * * *

However, we are persuaded from an examination of the opinion rendered by the board that its main thrust in affirming the examiner, as evidenced by the language employed, predicates the rejection solely on 35 U.S.C. § 103. The issue is so treated by the solicitor as well as counsel for appellants in whose brief it is stated:

> The claimed subject matter is not directly anticipated under 35 U.S.C. 102. The question presented is whether the subject matter as a whole would have been obvious under 35 U.S.C. 103 on August 4, 1953.

In its concluding summation, the board stated:

> It appears to us that the record adequately establishes that moist packed sutures are conventional articles for delivery in sterile condition to an operating area. With this article as the aim of the method, it is not seen wherein any new or unexpected features are involved in the type and handling of the package to bring the appealed claims above the status of being "obvious" in view of the applied references.

Appellants argue that their method is new and unobvious, not being suggested by the applied references.

Turning to the specification, appellants define the essence of their claimed invention as follows:

> * * * the invention consists in starting with a light-weight, completely sterile, liquid-containing plastic suture packet that is dry-packed in an internally sterile sealed outer envelope, the outer envelope being so constructed that it can be pulled apart and the inner suture packet discharged therefrom without its contacting an unsterile portion of the outer envelope; thus any contamination on the outer surface of the outer envelope remains in place, and the outer envelope is stripped apart, releasing the sterile inner packet at the time of use. The packet is sterile outside and inside, and may be slit open without comprising [sic] sterility.

Thus, it appears that the problem which appellants claimed to have solved is that of removing the inner suture packet from the outer envelope while preserving sterility on the inside as well as the outside of the packet. That problem would and does confront the everyday professional practitioner in the surgical art irrespective of the nature of the packet or its contents.

In its essence, basic claim 1 calls for a three-step procedure defining appellants' method. The procedure involves no more than stripping or pulling apart two sheets within which a packet is sealed; retaining any contaminants on the outer surfaces of the separated sheets; and peeling the sheets back from the packet in order that the packet may be presented for use in sterile form.

Aside from the nature of the contents to be released from the packet, Whitefoot and Ringlen disclose the essential steps called for in claim 1 in that each shows stripping apart two sheets and retaining the contaminants on the outer surface of the sheets. The Whitefoot sheets are peeled back disclosing the contents for their intended application. As previously noted, Ringlen states that the peeling back process is to a point so that the blade may be attached to a handle without manual handling of the blade. The patent to Hirsch relates to the maintenance of surgical sutures in a sterile condition and shows it to be old to enclose the packets in an outer envelope for this purpose. The methods employed by both Whitefoot and Ringlen are applicable to a variety of objects which must be kept and presented in a sterile condition.

The essential difference revealed in claims 2 to 12 over claim 1 is that these claims detail the characteristics of the inner liquid-tight packet. Appellants contend that Whitefoot and Ringlen are devoid of any showing suggestive of these characteristics.

We, however, are in agreement with the solicitor that "the only characteristic of appellants' suture-containing packet which is significant in connection with the steps which actually comprise appellants' method is that it is sterile and must be maintained so." It is clearly apparent that the contents of the Whitefoot and Ringlen envelopes are objects preserved and maintained in a sterile state for purposes and uses identical with the object of appellants' disclosure.

Appellants argue that the advantages of their claimed method over the prior commercial practice of packaging sutures in glass tubes with their inherent jeopardy to patient safety, should be accepted as clear proof that appellants' idea was unobvious and as constituting evidence of patentability of their complete process. In this connection it is to be remembered that none of the prior art herein relied on is related to the long extant method of enclosing sterile sutures in glass tubes. We do not, therefore, see the relevancy of a comparison with glass tubes. Any comparison of advantages should be restricted to the opening methods disclosed in the Hirsch, Whitefoot, and Ringlen disclosures.

We have considered the evidence of record relating to commercial success and appellants' argument based thereon. It is true that the showing of commercial acceptance and success of appellants' claimed method finds substantial support of record and is not to be lightly ignored. However, commercial success, after all, is but one evidentiary consideration which, as pointed out in Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed. 2d 545, might have relevancy in assessing the "level of ordinary skill in the pertinent art." It is not of itself primarily determinative, but is only one factor to be considered in determining unobviousness. Here the prior art presents such strong evidence of obviousness that a showing of commercial success in this case is inadequate to overcome it.

Our review of this record, consideration of the authorities cited and the argument of counsel do not persuade us of reversible error in the decision of the Board of Appeals. The decision is, accordingly, affirmed.

Affirmed.