**Application of Robert A. PALMER.**

**Patent Appeal No. 8581.**

United States Court of Customs and Patent Appeals.

Dec. 16, 1971.

Charles Shepard, Rochester, N. Y., attorney of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; John W. Dewhirst, Sol., Washington, D. C., of counsel.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN, and LANE, Judges.

LANE, Judge.

This is an appeal from the decision of the Board of Appeals affirming the examiner's final rejection of claim 17 of appellant's application serial No. 484,-005, filed August 31, 1965, for "Encased Steel Building Block." The board held the claimed invention to have been obvious from the patent to Lambert[1] alone and sustained the rejection of the claim at issue under 35 U.S.C. § 103. We affirm.

The sole claim on appeal defines a building block comprised of a core made from a compressed automobile body or portion thereof encased in cement and reads as follows:

> 17. A building block for heavy construction purposes comprising a central crumpled metallic core composed essentially of a portion of a compressed and crumpled sheet metal automobile body, encased in a coating of cement covering all exterior surfaces of said central core and interlocked therewith, at least the major part of said crumpled metallic core being formed from integrally inter-connected parts of a single automobile body.

Appellant's specification discloses that the core is made by stripping the automobile body of its heavy metal parts, heating the stripped body to burn out all combustible materials, working the body to produce cores of uniform weight and pressing the body to yield a compact solid mass composed mainly of steel. The core is then coated with cement to produce the claimed manufacture.

Appellant's specification further describes the two-fold purpose of the invention to be the manufacture of strong, large building blocks suitable for heavy duty construction as well as the utilization of junk automobiles "lying around open storage fields and junk yards by the thousands, which have produced such an unsightly condition widespread throughout the land * * *."

The Lambert patent, issued in 1921, disclosed structural building units made with a compact core of compressed "metal cans, containers and metallic receptacles of other kinds" completely covered with a protective coating of cement. Lambert also disclosed the use of waste sheet metal as core material.

The examiner finally rejected claim 17 as unpatentable over Lambert in view of another patent[2] under 35 U.S.C. § 103. The board rested its affirmance on Lambert alone and so that is the rejection before us. The board said:

> The claim states that the metallic core is "a portion of a compressed and crushed sheet metal automobile body," however, it is not seen why this particular selection of a source of scrap sheet metal imparts patentability to the claim. Lambert discloses his source of scrap metal to be waste cans and the like. In reflecting on the many sources from which scrap metal can be obtained, discarded automobile bodies is certainly [a] prominent one.

1. U. S. Patent No. 1,382,095, issued June 21, 1921.

2. U. S. Patent No. 2,097,342, issued October 26, 1937, to Rehfeld.

Although at first blush it may appear that the claimed block would be vastly different from that disclosed by Lambert simply because of the differences in size and character between an automobile and a conglomerate of tin cans, the appealed claim recites a *portion* of an automobile body, and the specification teaches that the body may be weighed and cut down to give cores of uniform, but unclaimed, weight. Moreover, the Lambert claim 1 is drawn to a structural unit having a core of waste sheet metal vessels broadly and thus amounts to a teaching in the reference which suggests to one of ordinary skill in the art to look beyond tin cans for other sources of scrap metal.

■ We agree with the board that the selection of an automobile body as the source of the core material would appear to have been obvious. We think that the Patent Office made out a strong case of prima facie obviousness and the burden fell on appellant to rebut it, if he could, with objective evidence of nonobviousness. In re Antle, 58 C.C.P. A. 1383, ——, 444 F.2d 1168, 1172 (1971).

Appellant urges in the way of rebuttal that the claimed structural unit is stronger than Lambert's principally because its core is comprised in major part of compressed metal "formed from integrally interconnected parts of a single automobile body" as opposed to separate entities brought together during compaction. If appellant intends by this argument to assert an improved and unexpected result as compared to the prior art, he has fallen short of supporting such a contention. Cf. In re Fenton, 59 C.C.P.A. Patent Appeal No. 8546, decided November 11, 1971; In re D'Ancicco, 58 C.C.P.A. 1057, 439 F.2d 1244 (1971); In re Lewis, 58 C.C.P.A. 1270, 443 F.2d 389 (1971). As the solicitor correctly points out, "There is no evidence by way

of comparative tests to back up this assertion," and this argument is not so obviously technically sound that judicial notice can substitute for the missing evidence. Accordingly, the argument, without more, is entitled to little or no probative weight. In re Cole, 51 C.C.P. A. 919, 923, 326 F.2d 769, 773 (1964), and cases cited therein.

Appellant further argues that nonobviousness is shown by the expression of interest in the invention by persons presumably skilled in the art which is documented and has been introduced into the record. Appellant states that "the present invention * * * has been the subject of a contract from the Bureau of Mines of the Department of the Interior."[3] The Bureau publicized the invention in a news release dated March 21, 1968. The news was apparently picked up by business magazines of general circulation, and by the fifth of April the appellant had received a number of letters generally praising the invention as described in the news release, inquiring as to details and, in some cases, suggesting potential contract interest.

The correspondence is impressive in substance and because of the spontaneity of the response. The correspondents apparently include construction firms, research organizations and industrial processors who would appear to be representative of the classes of persons who can be considered skilled in the art or arts directly and indirectly involved in the present invention. The issues raised by this evidence are its relevance and persuasiveness with respect to the ultimate question of obviousness under section 103.

■ Appellant has cited a number of cases in his brief and at oral hearing which generally indicate that this court, as well as other federal courts, has found patentable subject matter even

---

3. Although appellant's brief suggests that the Government contracted with appellant presumably because it wanted to use the invention, it is unclear from the news release of the Bureau of Mines whether that was the case or whether the invention was *made* under Government contract.

where the invention is apparently simple in nature or quite "close," on the surface, to the prior art, but where the small difference has eluded those of ordinary skill in the art in search of the solution to a persistent problem or where that difference unexpectedly yields an improved product or known product in an unexpectedly advantageous manner. There are many opinions of that type,[4] the point being that the legal conclusion of obviousness cannot be reached without an appreciation of the level of ordinary skill in the art, Graham v. John Deere Co., 383 U.S. 1, 17, 86 S. Ct. 684, 15 L.Ed.2d 545 (1966), and that "level" must be determined by a consideration of all evidence made available to the trier of the issue which is related to the state of the particular technology at a given point in time. When *all* the evidence is evaluated, it may well turn out, and often does, that the level of skill was not quite what it appeared to be when only a *portion* of the evidence, e. g., printed patents or publications, was considered. See In re Orfeo, 58 C.C.P. A. 1123, 440 F.2d 439 (1971).

Most of the objective evidence presented by patent applicants to the Patent Office to establish nonobviousness, or, perhaps more correct in a procedural sense, to rebut a prima facie case of obviousness, is technical in nature—a comparison of the prior art products with the claimed products, for example. Another class of objective evidence, more prominent in inter partes litigation, is nontechnical and is offered for the purpose of proving the actual knowledge of those of ordinary skill in the art by inference from their actions before and after the invention is made known to them. Evidence of commercial success and of long-felt but unsatisfied need are the recurrent examples of this type of evidence.

We recently found a showing of commercial success to be persuasive of nonobviousness in In re Tiffin, 58 C.C.P.A. 1277, 443 F.2d 394, *modified*, 58 C.C.P. A. 1420, 448 F.2d 791 (1971). We were convinced that the fulfillment of a long-felt need and immediate substantial commercial success of the invention reflected the level of skill in the pertinent art in that case and held the evidence sufficient to overcome the prima facie case of obviousness established by the Patent Office.

In the present appeal we are confronted with something akin to evidence of commercial success. The favorable correspondence to appellant by tradesmen and others working in the technological art area of the invention sheds light on the impressions of those assumed to possess ordinary skill in the art since the invention was made and accordingly is considered probative evidence of the level of skill in the art at the *time* the invention was made. That the Board of Appeals considered this evidence is clear from its statement that:

> We have reviewed the rejection of the claim in light of Appellant's oral and written arguments; and notwithstanding an expressed interest in the invention by the Department of the Interior, through the Bureau of Mines; and various letters of inquiry from different sources around the country, we share the Examiner's position that Appellant's invention is made obvious in view of the teachings of the Lambert patent.

When commenting on the letters, however, the board said:

> We acknowledge the apparent commercial success of the invention but where, as in this instance, it appears from the record that the claim does not define patentable subject matter,

---

4. See, e. g., United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572, (1966); Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523 (1923); In re Papesch, 50 CCPA 1084, 315 F.2d 381, (1963); Lyon v. Bausch & Lomb Optical Co., 224 F.2d 530 (2d Cir. 1955); Garrett Corp. v. United States, 190 Ct. Cl. 858, 422 F.2d 874 (1970).

such success will be of no avail. Only in case of doubt as to patentability is such consideration of moment.

 For the reasons we have stressed above, we deem evidence of the type presented here to always have a bearing on the question of obviousness, hence patentability. The board's disposition of the evidence is as much as deciding the case first and looking at the evidence afterward—an approach which cannot be permitted. The letters here are a *part* of the record and it would be improper to ignore them. The board was in error to the extent that it regarded the correspondence of record as legally irrelevant merely because it is of a qualitative, nontechnical character. In re Heldt, 58 C.C.P.A. 701, 433 F.2d 808 (1970); In re Sponnoble, 56 C.C.P.A. 823, 405 F.2d 578 (1969). However, we agree with the board to the extent that the evidence was considered nonpersuasive of patentability in this particular case.

 The board gave the letters too much credit when it conceded that they demonstrated "apparent commercial success." At best, they hold forth the *promise* of success, but as far as the record before us shows, such success has not been realized thus far. The letters are in reality letters of inquiry. As such, they fail to clearly indicate what would impress the correspondents so much as to lead them to finally decide to commercialize the invention. We cannot say with confidence that upon further disclosure than was afforded by the news reports and examination of the product and process of its manufacture the correspondents would remain as enthusiastic as they appear to have been when they wrote these letters. We are also aware of the recent surge in interest in products and processes which would enhance the environment and this, rather than trade recognition of the advent of a solution to a tenacious problem, may have prompted the enthusiastic response. Translating these conclusions into an application of the principles we have developed above, we simply are not persuaded that the letters of record demonstrate that the level of skill in the art at the time the invention was made was such as to overcome the inference of obviousness properly drawn from Lambert.

We do not say that evidence of trade reaction can never be sufficient to establish nonobviousness unless brought to the level of commercial success or that given commercial success, it necessarily follows that the claimed subject matter is patentable. In the case before us we are faced with a very strong prima facie case and what we regard as weak evidence of nonobviousness. On balance we hold the claim not to be patentable and *affirm* the decision of the board.

Affirmed.

WORLEY, C. J., concurs in the result.