**Application of James C. FIELDER and Hubert H. Underwood.**

**Patent Appeal No. 8788.**

United States Court of Customs and Patent Appeals.

Jan. 18, 1973.

Rehearing Denied April 5, 1973.

Edward D. O'Brian, Anaheim, Cal., attorney of record, for appellants. J. Harold Kilcoyne, Washington, D. C., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents.' R. V. Lupo, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

LANE, Judge.

This appeal is from the decision of the Board of Appeals sustaining the examiner's rejection of the sole remaining claim in appellants' application [1] for "Tabulating Type Ballot Construction" as unpatentable under 35 U.S.C. § 103. We affirm.

### The Subject Matter

Appellants claim a voting ballot of defined structure. The ballot is constructed to allow a voter to indicate his preference in an election by selectively puncturing perforated areas placed next to the names of the candidates or the answers to referendum questions.

The structure of the ballot is shown in Figure 1 as follows:

FIG. 1.

[A8007]

In the drawing, the ballot card 10, with edges 12, 14, 16 and 18, has rows 28 of perforated areas 30 located adjacent to rows 25 of spaces for indicia 26 (no indicia shown). Figure 1 depicts face 22, and the other face is similarly constructed. The perforated areas 30 on the right side of the card 10 are those which apply to indicia on face 22 while the areas 30 on the left side of the card

apply to indicia on the other face. Both faces can be used because of this offsetting of perforated areas. Finally, sloping edge 20 enables a differentiation between the front and back faces of the card.

The ballots are asserted to be easy to make, use by the voter and tabulate by computer, and to provide a relatively inexpensive alternative to the use of conventional voting machines.

The appealed claim reads as follows:

4. A tabulating type card ballot which comprises:

(a) a flat, rectangular, tabulating card having opposed surfaces and parallel side edges connected by parallel ends;

(b) means formed on said card for mechanically differentiating between the surfaces of said cards;

(c) each of the surfaces of said card containing a row of different, separate indicia, each of such indicating an item to be voted on by the use of said card;

(d) a perforated area adapted to be engaged by an instrument so as to be removed from said card leaving a hole in said card so as to indicate a vote corresponding to one of said indicia located along a side edge of said card opposite each of said indicia;

(e) those perforated areas opposite those indicia on one surface of said card being located adjacent to one of the side edges of said card and those perforated areas opposite those indicia on the other surface of said card being located adjacent to the other of the side edges of said card;

(f) said indicia in said rows being spaced from said side edges of said card a sufficient distance so that none of said indicia are disturbed when any of said perforated areas are removed from said card;

(g) the surfaces of said card being printed so as to indicate the correspondence of the indices of each sur-

---

1. Serial No. 408,119 filed November 2, 1964.

face of said card and the perforated areas opposite such areas so that a voter can visually determine which of said areas should be removed from said card in voting on a specific item;

(h) said perforated areas being located on said card so that the absence of a specific perforated area may be determined so as to indicate a vote corresponding to the one of said indicia opposite such area.

### Prima Facie Obviousness

The board affirmed the rejection of that claim under 35 USC 103 as obvious from Cunningham et al.[2] (Cunningham) in view of Brougham,[3] Nevin[4] and Lasker.[5]

Cunningham discloses a ballot structured so that votes may be cast by puncturing selected areas located adjacent to indicia and tabulated by machine.

Brougham discloses a record card for use with statistical or other machines in which selected index points may be punctured by the user. The points are perforated to facilitate separation from the card.

Both Nevin and Lasker are directed to sorting cards. They teach the use of both sides of a card and the use of a sloped edge.

The board agreed with the examiner that it would have been obvious to one of ordinary skill in the art to modify the Cunningham ballots by adopting the expedients suggested by Brougham, Nevin and Lasker and thereby arrive at a ballot upon which the claim on appeal reads.

Appellant does not seriously contend that the references would not appear to suggest the claimed subject matter. In fact, the solicitor urges that appellant has conceded that a case of prima facie obviousness has been established.

The burden of appellants' argument is that the claimed invention has enjoyed substantial commercial success and satisfies long-felt, but previously unsolved, needs. Appellants rely on affidavit evidence of record and primarily assert that the board failed to give proper weight to that evidence.

While appellants' brief before this court includes some language which could be taken as a concession of prima facie obviousness, there are some contentions advanced which would appear to be inconsistent with such a concession. At oral argument, however, appellants did not seek to deny that a concession had been made and, indeed, focused on the submitted affidavit evidence rather than any deficiencies in the reference teachings or their combination per se. Suffice to say, we agree with the board and solicitor that a prima facie case of obviousness has been made out by the Patent Office.

### Appellants' Rebuttal Case

This court has indicated that a prima facie case of obviousness is established when it would appear that the reference teachings upon which the Patent Office relies are sufficient for one of ordinary skill in the relevant art to make the combination proposed by the examiner. In re Lintner, 458 F.2d 1013, 1016, 59 C.C.P.A. ——, —— (1972). The inquiry initially centers about the prior art upon which the Patent Office depends for its rejection.

Appellants claim that other specific prior art references, not of record, support patentability. They are critical of the Patent Office for failing to cite and consider them. It was suggested that the solicitor include copies of these references in his brief, and we are asked to take judicial notice of them.

Once prima facie obviousness is found, the burden shifts to the appel-

2. U.S.Patent No. 621,634 issued March 21, 1899.

3. British Patent No. 243,099 issued November 26, 1925.

4. U.S.Patent No. 2,342,517 issued February 22, 1944.

5. U.S.Patent No. 2,084,848 issued June 22, 1937.

lant to rebut it, if he can, with objective evidence of nonobviousness. In re Antle, 444 F.2d 1168, 1172, 58 C.C.P.A. 1382, 1387 (1971); In re Palmer, 451 F.2d 1100, 1102, 59 C.C.P.A. ——, —— (1971). It was therefore *appellants'* burden in the present case to submit any prior art which they regard as tending to prove nonobviousness. The references to which appellants refer were not before the board, are not part of the record before this court, and are not being offered as proof of facts of which this court will take judicial notice. We do not consider them. 35 U.S.C. § 144. See also In re Moore, 409 F.2d 585, 589, 56 C.C.P.A. 1060, 1065 n. 7 (1969); In re Mergner, 399 F.2d 231, 236, 55 C.C.P.A. 1415, 1421 n. 5 (1968).

Appellants have attempted to overcome the prima facie case of obviousness primarily by the filing of an affidavit of coinventor Fielder accompanied by seven exhibits labeled A through G.

Exhibits A, B and C show a sample ballot and how the ballots are used by the voters and tabulated by election officials.

Exhibits D, E and F are reproductions of generally laudatory newspaper accounts of the use of the claimed ballots in California and Hawaii.

Exhibit G is a comparative analysis of actual cost of an election in which the ballots were used against projected cost using paper ballots.

### Patent Office Position

The record does not make clear the positions of the examiner and the Board of Appeals regarding the appellants' rebuttal evidence. The examiner said:

Appellant's exhibits have been carefully considered. The apparent commercial use of appellant's device is not deemed persuasive of unobviousness thereof in light of the reference.

The board introduced its opinion with the following:

We have given careful consideration to all the arguments presented on appellants' behalf in the brief and at the oral hearing and to the affidavit and the exhibits of record; however, we do not find them convincing of error as to the stated rejection for reasons to follow herein.

The board's opinion principally deals with the prior art teachings and their combination as proposed by the examiner. The only exposition of the board's reason for not being persuaded of patentability by the affidavit evidence appears in the following paragraph:

Commercial success, of an invention, while a factor to be considered in determining obviousness of the invention, is not of patentable significance where the question of obviousness is not in doubt, as is the case here. In re Rynkiewicz et al., 390 F.2d 742, 55 C.C.P.A. 977 [(1968)].

Appellants contend that the board gave little or no consideration to the substance of the showing offered by them and argue that this approach to obviousness under § 103 is erroneous. Moreover, appellants strenuously assert that the evidence is persuasive of nonobviousness when properly evaluated on the merits.

The solicitor is of the view that the board did *not* consider the evidence on the merits since it found patentability not to be otherwise in doubt. The thrust of the solicitor's argument before this court is that evidence of commercial success and satisfaction of long-felt, but previously unsolved, needs is immaterial to the question of obviousness when obviousness is deemed to be established from the prior art without doubt.

### OPINION

Both the board and the examiner stated that the affidavit evidence had been "considered," and we have no way of determining the extent to which that was done or the flaws found to exist in the proofs. The sparse explanation given in the board's opinion provided little guidance to appellants in framing their appeal or to this court in reviewing the obviousness rejection. It may be that the board was of the view, as suggested by

the solicitor, that unless patentability is in doubt, evidence of commerical success and the like is immaterial.

■ We note that the decision of the board in this case was rendered January 15, 1970. Since that time, we have made clear our position that such evidence must *always* be considered in connection with the determination of obviousness. In re Palmer, supra; In re McLaughlin, 443 F.2d 1392, 1395, 58 C. C.P.A. 1310, 1314 (1971). Indeed, in In re Tiffin, 443 F.2d 394, 58 C.C.P.A. 1277, modified 448 F.2d 791, 58 C.C.P.A. 1420 (1971), a showing of commerical success and satisfaction of long-felt need was held sufficient to overcome prima facie obviousness on the facts of the case. If it was previously the law that commercial success is "of no moment unless patentability is in doubt," In re Sejournet, 285 F.2d 823, 826, 48 C.C.P.A. 799, 804 (1961), such a proposition no longer has vitality.

■ The solicitor acknowledges the current position of this court on this matter, but urges that we reconsider it. We find no reason to change our position. A patent applicant faced with a rejection grounded on obviousness should be entitled to respond to that rejection with any evidence bearing on the question that can be mustered. Evidence of commercial success, for example, may, in a given case, be directly relevant to the question. The only way to find out is to evaluate the evidence. We can see no logical justification for refusing to do so.

In Graham v. John Deere Co., 383 U. S. 1, 17–18, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966), the Supreme Court stated:

Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have

relevancy. See Note, Subtests of "Nonobviousness": A Nontechnical Approach to Patent Validity, 112 U. Pa. L.Rev. 1169 (1964).

The University of Pennsylvania Law Review article to which the Court referred offers the following explanation for the relevance of satisfaction of long-felt, but unsolved needs to nonobviousness:

A defect in a product or process spurs the businessman to deploy resources for discovering a solution. \* \* \* Existence of the defect creates a demand for its correction, and it is reasonable to infer that the defect would not persist were the solution "obvious."[6]

With regard to commercial success, the author reasoned:

The possibility of market success attendant upon the solution of an existing problem may induce innovators to attempt a solution. If in fact a product attains a high degree of commercial success, there is a basis for inferring that such attempts have been made and have failed.[7]

These rationales, presumably approved by the Court, tie commercial success and the like directly to the practical, financial source of impetus for research and development. Evidence of commercial success and similar facts also relates to the level of ordinary skill prevailing in the pertinent art when it demonstrates "the actual knowledge of those of ordinary skill in the art by inference from their actions before and after the invention is made known to them." In re Palmer, supra, 451 F.2d at 1103, 59 C. C.P.A. at ——.

The solicitor does not propose any comparable underlying theory for the exclusion of such evidence from the § 103 inquiry. Rather, the basis for contending for a retreat from the position we have assumed is that it is allegedly contrary to the holding of the Supreme Court in Anderson's-Black Rock, Inc. v.

6. 112 U.Pa.L.Rev. at 1172.

7. Id. at 1175.

Pavement Salvage Co., 396 U.S. 57, 61, 90 S.Ct. 305, 308, 24 L.Ed.2d 258 (1969), wherein Mr. Justice Douglas, writing for the Court, stated:

It is * * * fervently argued that the combination filled a long felt want and has enjoyed commercial success. But those matters "without invention will not make patentability." A. & P. Tea Co. v. Supermarket Corp., 340 U.S. 147, 153, 71 S.Ct. 127, 130, 95 L.Ed. 162.

The language "those matters 'without invention will not make patentability'" is difficult to interpret since it requires an understanding of the meaning of the term "invention," a formidable task,[8] and an appreciation of the distinctions between "invention" and "patentability," if any. This court has sought to move away from the language of "invention" and focus on the conditions of patentability prescribed in title 35 of the United States Code, specifically § 103 thereof, in accordance with the mandate in *Graham,* supra, 383 U.S. at 19, 86 S.Ct. 684.

For the most part, the *Black Rock* opinion deals with the Court's determination of obviousness of the involved subject matter along the lines of the *Graham* pattern of analysis. We believe the language quoted from the *Black Rock* opinion, if given the meaning urged by the solicitor, would be inconsistent with the *Graham* standards. The paramount importance of those standards was more recently indicated by the Court in Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 333, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

In view of the otherwise predominant focus on *Graham* in the *Black Rock* opinion, we can only conclude that the Court was not persuaded of nonobviousness by the showing offered by that patentee on the facts of that case. So construed, the opinion is internally harmonious from a substantive standpoint. We therefore agree with the Ninth Circuit Court of Appeals in Reeves Instrument Corp. v. Beckman Instruments, Inc., 9 Cir., 444 F.2d 263, 271 (1971), which interpreted *Black Rock* as a reaffirmation of, rather than a deviation from, Graham v. John Deere.

The solicitor has directed our attention to a recent judgment of the United States District Court for the District of Columbia in Leesona Corp. v. Commissioner, Civil Action No. 1537–69 (October 19, 1972), wherein Judge McGuire, in a memorandum opinion, held that "commercial success * * * does not remedy the fatal defect of obviousness," citing *Graham.* To the extent that that holding is interpreted to be in accord with the proposition that commercial success is irrelevant to patentability under § 103, we respectfully disagree with the District Court for the reasons expressed herein. We also do not agree that *Graham* supports such a view.

While we do not have the benefit of the board's specific findings of insufficiency of the affidavit evidence of record in this case, assuming that the evidence was considered on the merits, we do not feel a remand is warranted here. We are confident that evidence of this character is now being carefully reviewed in accordance with *McLaughlin, Tiffin,* and *Palmer,* and any reasons for finding such evidence not to be persuasive in a given case are being set forth with clarity. Recognizing the investment of time and effort already made by the parties, we conclude that justice would not be best served by remanding the case to the board. Compare In re Smith, 59 C.C.P.A. ——, ——, 458 F.2d 1389, 1393 (1972) with In re Mantell, 59 C.C.P.A. ——, ——, 454 F.2d 1398, 1404 (1972) and In re Clark, 457 F.2d 1004, 1008, 59 C.C.P.A. ——, —— (1972).

---

8. See, e. g., Rich, Principles of Patentability, 28 Geo.Wash.L.Rev. 393 (1960); Editorial Note, After Black Rock: New Tests of Patentability—The Old Tests of Invention, 39 Geo.Wash.L.Rev. 123 (1970).

We have no difficulty determining that the affidavit evidence is not convincing of patentability.

The affidavit itself does little more than prove the use of the ballots in several elections. It establishes no extensive' or substantial use. Exhibits A, B and C only explain how they were used.

The newspaper articles, exhibits D, E and F, are generally unpersuasive. Accepting the commendatory remarks in the articles as emanating from sources qualified to make them, the favorable response appears to have been evoked more by automated tabulation in general than any particular characteristics possessed by the claimed ballots.

The comparative cost analysis, exhibit G, purports to demonstrate substantial cost savings resulting from the use of the claimed ballots. The actual cost of an election was compared to *projected* cost of using *paper* ballots based on the use of paper ballots in a previous election.

The analysis shows that the projected costs for "election officer salaries," "clerical charges," and "forms, materials and supplies" (not including ballots) in a paper ballot election were substantially greater than those actually incurred in the punch card election. However, the costs of the punch card ballot marking devices and programs for computerized tabulation of results offset some of the difference. Net savings in an election that actually cost about $136,000 were estimated at about $26,000.

We fail to see the significance of this data. We find no proven relationship between lower costs in the items enumerated above and the claimed ballots.

Appellants have made no effort to explain the bases for the projected figures in the critical items or to tie the ballots per se to the savings. Even if it could be fairly concluded that in the sample election there were substantial, unexpected cost savings directly attributable to the use of the claimed ballots, we doubt that a single experience premised on a comparison with the use of *paper* ballots is a reliable basis for anticipating cost savings generally.

■ As a whole, the affidavit and exhibits A through G fail to establish either commercial acceptance on any meaningful scale or the existence and satisfaction of long-standing needs. At best, the evidence shows several instances of use and some favorable reaction thereto which holds forth a promise of possible future use. See In re Palmer, supra, 451 F.2d at 1104, 59 C.C.P.A. at ——.

In any event, it is not at all clear from the evidence that any successful use which might be credited stems from the advent of the claimed ballots as distinguished from the contemporary drive toward the greater use of automated data processing techniques. A nexus between the claimed invention and the alleged success has not been established. See In re Caveney, 386 F.2d 917, 922–923, 55 C.C.P.A. 721, 727–729, (1967); In re Heldt, 433 F.2d 808, 812–813, 58 C.C.P.A. 701, 707–708 (1970).

We conclude that the prima facie case of obviousness has not been overcome. The decision of the board sustaining the rejection of the appealed claim is accordingly affirmed.

Affirmed.