# IN THE SUPREME COURT OF IOWA

No. 10–0319

Filed June 7, 2013

**STATE OF IOWA,**

 Appellee,

vs.

**ANTHONY GEORGE BROTHERN,**

 Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Black Hawk County, Bradley J. Harris, Judge.

The defendant seeks further review of a court of appeals decision rejecting his claim of ineffective assistance relating to a habitual offender enhancement and affirming his conviction and sentence. **COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Bridget A. Chambers, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Michelle M. Wagner, Assistant County Attorney, for appellee.

**MANSFIELD, Justice**.

This case presents the question whether trial counsel's failure to object to an amendment of the trial information after the close of evidence to add a habitual offender enhancement constitutes ineffective assistance of counsel. We conclude there are circumstances when such an amendment should not be allowed at that stage of the proceedings. We also conclude the record before us is insufficient to resolve the defendant's ineffective-assistance claim. Accordingly, we affirm the defendant's conviction and sentence, but vacate the court of appeals decision that rejected his ineffective-assistance claim.

## I. Facts and Procedural Background.

The record in this case indicates that Anthony Brothern beat his live-in girlfriend in the face while she was lying in bed on the night of June 21, 2009. According to the girlfriend, Brothern also held a knife to her chest and put her in fear for her life. The next day, the girlfriend reported the incident to Waterloo police. The injuries were photographed, and charges were filed against Brothern.

Count I of the original trial information charged Brothern with "ASSAULT DOMESTIC ABUSE CAUSING BODILY INJURY—ENHANCED," in violation of Iowa Code section "708.2A(3)(b)—Class D Felony." It appears the State intended to prosecute Brothern for felony assault under the enhancement contained in section 708.2A(4), because the information referred to count I as a "Class D Felony," used the term "ENHANCED," and listed two prior assault domestic abuse convictions consistent with that provision. *See* Iowa Code § 708.2A(4) (2009) ("On a third or subsequent offense of domestic abuse assault, a person commits a class 'D' felony."). However, the information only cited section 708.2A(3)(*b*), the unenhanced aggravated misdemeanor provision.

In count II, the State charged Brothern with "ASSAULT DOMESTIC ABUSE BY USE OR DISPLAY OF A WEAPON," in violation of section 708.2A(2)(*c*). That offense is an aggravated misdemeanor. Unlike count I, this count did not refer to prior convictions or a potential enhancement.

The case proceeded to trial. At the close of evidence, but prior to closing arguments, the State moved to amend the trial information. The amended information stated in both counts I and II that Brothern had violated section 708.2(A)(4), the enhanced class "D" felony provision, because of his prior domestic abuse assault convictions. In addition, the amended count I sought a habitual offender enhancement based on Brothern's prior felony convictions in 1998 and 1996, respectively, for extortion and prohibited acts. *See* Iowa Code § 902.8 (providing that a habitual offender includes anyone convicted of a class "D" felony who has been twice before convicted of a felony and that such persons shall not be eligible for parole until they have served a minimum of three years).

Brothern's trial counsel objected to the proposed amendment to count II on due process grounds, but did not object to the amendment to count I. The district court granted the State's motion to amend the trial information. Subsequently, the jury found Brothern guilty of the underlying charge in count I and acquitted him on count II.

The court scheduled a separate trial on the count I enhancements. Meanwhile, Brothern's attorney was allowed to withdraw, and a new attorney was appointed. On the day of the separate trial, Brothern decided to admit all four previous convictions and pled guilty to both the section 708.2A(4) and the section 902.8 enhancements.

Following his guilty plea to the enhancements, and before his sentencing hearing, Brothern filed a combined motion for a new trial and

motion in arrest of judgment. In the combined motion, Brothern asserted the jury verdict was contrary to law, arguing:

> It is improper to bootstrap the charge of habitual offender out of an enhancement on an underlying misdemeanor. It is improper to render another enhancement on the back of an enhancement.

He also asserted, generally, that his original trial counsel had been "ineffective."

At the hearing on his posttrial motions, Brothern's new attorney made the following argument regarding the habitual offender enhancement to count I that had not been objected to:

> I believe that that violates [the] rule of criminal procedure . . . regarding amendments to trial information, and so we would ask that that count be stricken for that reason. And certainly goes to fundamental fairness on the part of a defendant. They may have proceeded differently with their trial had that been filed before trial, and so it certainly prejudices any defendant to allow a trial information to be amended once they have already started a trial.
>
> So for that reason we think that the enhancement for the habitual should be dismissed, Your Honor.

Moments before, the prosecutor had said the following:

> Looking at a little bit of the history through the plea agreements, Your Honor, I just have what I jotted down in my files. Looked like the state's recommendation before trial on this was for a five-year sentence, to run both counts I and II concurrent, and the state would not file an habitual. I believe that was turned down by Mr. Brothern. Your Honor, we met in chambers before this case began, and I guess I don't recall if this was on the record or if the court does recall it, as you were the trial judge, from my notes what I have is that before jury selection started we offered Mr. Brothern a 10-year sentence, to run counts I and II consecutive. That was refused and jury selection began.
>
> I guess the odd thing, Your Honor, we did file the habitual. It was I believe during jury selection or during the trial because Mr. Brothern did or wanted his trial. I do not know of any discussions between himself and [his trial

attorney], but that was part, if he did not agree to the agreements, we were going to file the habitual.

The defense did not dispute the prosecutor's statement that Brothern's then-trial counsel had been told a habitual offender enhancement would be filed if he turned down the plea agreement and went to trial.

The district court denied Brothern's motions. It treated the allegedly improper enhancement as a potential ground for arresting the judgment, but overruled that ground, observing:

> There was later an enhancement to make this an habitual offender. The law is well-settled that the enhancement to make this an habitual offender simply changes the sentencing and is not a wholly new or different offense, and therefore the amendments were proper and were allowed.

The court sentenced Brothern to a term of incarceration not to exceed fifteen years with the condition that he would not be eligible for parole until he had served three years. *See* Iowa Code §§ 902.8, .9(3).

Brothern appealed, raising the single issue whether his trial counsel had been ineffective for not objecting to the prosecution's attempt to add a habitual offender enhancement to count I at the close of evidence. He urged the enhancement violated his rights to due process under the United States and Iowa Constitutions. He explained, "Consider the fact that Brothern could have chosen to plead guilty up until the trial date to the offenses which he was facing. Had Brothern pled guilty prior to trial, the State would have been estopped from filing the enhanced charges."

We transferred the case to the court of appeals, which found the record sufficient to address Brothern's ineffective-assistance claim and rejected it. We then granted Brothern's application for further review.

## II. Error Preservation and Scope of Review.

In this case, the defendant did not object when the State moved to amend count I of the trial information to add the habitual offender enhancement. Instead, he waited until after the jury returned its verdicts on the underlying domestic abuse assault charges. Generally, we require objections to be made "at the earliest opportunity" after the grounds become apparent. *State v. Johnson,* 476 N.W.2d 330, 334 (Iowa 1991) (holding that an objection to the composition of the jury panel was untimely when it was first raised in the defendant's postverdict motion in arrest of judgment or for new trial).

Defendant asserted ineffective assistance of counsel (both here and below) in order to avoid potential error preservation problems. Ineffective assistance of counsel is an exception to the traditional error preservation rules. *See State v. Fountain,* 786 N.W.2d 260, 263 (Iowa 2010). As we read the defendant's combined motion for new trial/motion in arrest of judgment, it appears to urge that a constitutionally adequate counsel would have objected to the amendment, and the objection would have been sustained.

Iowa Code section 814.7 provides, "An ineffective assistance of counsel claim in a criminal case shall be determined by filing an application for postconviction relief pursuant to chapter 822, except as otherwise provided in this section." *See* Iowa Code § 814.7(1). It further provides that a party "may, but is not required to, raise an ineffective assistance claim on direct appeal from the criminal proceedings." *Id.* § 814.7(2). There is no provision for bringing an ineffective-assistance-of-counsel claim before the direct appeal, even when as here there has been a substitution of counsel.

The State did not argue below that Brothern had waived any objection to the amended information by not asserting it during trial. In other words, the State did not contend that Brothern had to raise his claim in the form of ineffective assistance. Rather, the State simply disagreed with Brothern on the merits; it maintained the amendment was permissible and appropriate. The district court, therefore, did not delve into ineffective assistance. Rather, it concluded on the merits that the amendment "simply changes the sentencing and is not a wholly new or different offense, and therefore . . . proper."

We believe the appropriate course now is to apply our well-established procedural standards for ineffective-assistance claims that are raised for the first time on *appeal*. As we note above, section 814.7 does not by its terms allow such claims to be raised before the direct appeal. Also, as noted above, the district court did not treat Brothern's opposition to the amended count I below as an ineffective assistance claim. Finally, Brothern has not framed the present appeal as an appeal from the denial of his posttrial motions. Rather, both Brothern and the State have briefed the present appeal as if the ineffective-assistance claim were being raised for the first time.

Thus, we will decide whether the appellate record is adequate to determine the claim. *See State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010). If not, the claim will be preserved for postconviction relief. *Id.* We review claims of ineffective assistance de novo. *See State v. Clark*, 814 N.W.2d 551, 560 (Iowa 2012).

### III. Legal Analysis.

Brothern argues his trial counsel was ineffective for failing to register a timely objection to the State's proposed amendment to count I of the trial information. To succeed on his ineffective-assistance-of-

counsel claim, Brothern " 'must establish counsel breached a duty and prejudice resulted.' " *Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012) (quoting *Castro v. State*, 795 N.W.2d 789, 794 (Iowa 2011)); *see also Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984). Brothern "must prove both elements by a preponderance of the evidence." *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006).

To establish that his trial counsel breached a duty, Brothern has to show the attorney's performance fell below the standard of a "reasonably competent attorney." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693 (citation and internal quotation marks omitted). "We will not find counsel incompetent for failing to pursue a meritless issue." *State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011). To demonstrate prejudice for ineffective-assistance purposes, Brothern must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698.

Pinpointing a breach of duty in this case requires consideration of whether Brothern's missing objection would have succeeded in the first place. If it would not have been successful, Brothern's trial counsel could not have breached a duty. *See Brubaker*, 805 N.W.2d at 171.

We begin with the rule that governs here. Iowa Rule of Criminal Procedure 2.4(8) states:

> The court may, on motion of the state, either before or during the trial, order the indictment amended so as to correct errors or omissions in matters of form or substance. Amendment is not allowed if substantial rights of the defendant are prejudiced by the amendment, or if a wholly new and different offense is charged.

Iowa R. Crim. P. 2.4(8). "The term 'indictment' embraces the trial information, and all provisions of law applying to prosecutions on indictments apply also to informations . . . ." Iowa R. Crim. P. 2.5(5).

We have interpreted the phrase "during the trial" under Iowa Rule of Criminal Procedure 2.4(8) to mean "the substantive trial when the State seeks to enhance the defendant's sentence based on a prior conviction." *State v. Bruce*, 795 N.W.2d 1, 5 (Iowa 2011). That is:

> [W]e believe the phrase "during the trial" means the period of time in which the trier of fact hears evidence and makes a decision based on that evidence. Under this definition, once the jury returns its verdict, the trial has concluded.

*Id.* at 3 (citation omitted). Here, the State sought the amendment *after* the close of evidence but *before* the case went to the jury in the main case. Thus, the State's motion was made "before or during trial."

Additionally, the amendment to count I did not charge a "wholly new and different offense." *See* Iowa R. Crim. P. 2.4(8). We have held in a drug case that an amendment increasing the charge from a class "C" felony (500 grams or less) to a class "B" felony (more than 500 grams) did not implicate this language. *See State v. Maghee*, 573 N.W.2d 1, 5–6 (Iowa 1997). There we noted, "[T]he amendment charged the same offense but with a larger amount of drugs involved resulting in a potentially more severe sentence." *Id.* at 5.

Even more directly on point, we have said that "Iowa Code section 902.8 (1983), a recidivist law, does not define a separate crime but merely constitutes a predicate for enhanced punishment." *State v. Berney*, 378 N.W.2d 915, 919 (Iowa 1985), *overruled on other grounds by Bruce*, 795 N.W.2d 1. Here, the underlying offense of domestic abuse assault remained the same; the State simply sought enhanced penalties based on Brothern's prior convictions. *See Berney*, 378 N.W.2d at 919;

*cf. State v. Sharpe,* 304 N.W.2d 220, 224–25 (Iowa 1981) (holding that district court erroneously allowed amendment from second-degree to first-degree murder because the latter is a "wholly new and different offense").

This brings us to the following language in rule 2.4(8): "Amendment is not allowed if substantial rights of the defendant are prejudiced by the amendment . . . ." We believe this language, at a minimum, requires that the amendment comply with applicable constitutional guarantees. *See State v. Jones,* 817 N.W.2d 11, 17 (Iowa 2012) (noting that "we strive to avoid constitutional problems when we interpret our rules"). Although Brothern primarily frames his argument in terms of federal and state constitutional "due process," he also refers to his rights to be informed of the accusation against him as set forth in the Sixth Amendment to the United States Constitution and article I, section 10 of the Iowa Constitution. An amendment that did not meet these constitutional standards would clearly prejudice substantial rights. By the same token, an amendment that satisfies rule 2.4(8) should meet constitutional notice requirements. *Compare Maghee,* 573 N.W.2d at 6 (focusing on defendant's notice of the State's intention to seek heavier sentencing), *with State v. Seering,* 701 N.W.2d 655, 665–66 (Iowa 2005) ("At the very least, procedural due process requires notice and opportunity to be heard in a proceeding that is adequate to safeguard the right for which the constitutional protection is invoked." (Citations and internal quotation marks omitted.)).

In the past, we have said "[a]n amendment prejudices the substantial rights of the defendant if it creates such surprise that the defendant would have to change trial strategy to meet the charge in the amended information." *Maghee,* 573 N.W.2d at 6 (citing *State v.*

*Fuhrmann*, 257 N.W.2d 619, 624 (Iowa 1977)). As noted above, *Maghee* involved the elevation on the morning of trial of a cocaine-possession charge from a class "C" felony (500 grams or less of cocaine) to a class "B" felony (more than 500 grams). *Id.* at 5. In finding no violation of the rule, we highlighted several points. For one thing, the minutes of testimony referenced the amount of drugs involved. This "put [the defendant] on notice that the State considered his case to be a major drug offense." *Id.* at 6. Also, we concluded that Maghee "appeared ready to defend against . . . the class 'B' felony amended charge." *Id.* "We say this because he did not ask for the traditionally appropriate remedy for a defendant's claim of surprise: a continuance." *Id.*; *see also State v. Schertz*, 330 N.W.2d 1, 2 (Iowa 1983) (holding that the district court did not abuse its discretion in denying a continuance where the State amended the information to add an alternative means of committing the crime of kidnapping).

An additional point we made was that "the amendment did not change Maghee's defense strategy." *Maghee*, 573 N.W.2d at 6. "His defense turned on his assertion that he never possessed the cocaine, whatever the amount." *Id.*; *see also Fuhrmann*, 257 N.W.2d at 624 (holding the state's amendment did not prejudice the defendant's substantial rights because defendant did not "allege he would have changed his trial preparation or strategy given earlier knowledge of the amended petition").

We have not specifically considered whether the "prejudice" component of rule 2.4(8) includes the notion that a defendant might have made a different *plea* decision had he or she known of the amendment earlier. It stands to reason, though, that "defense strategy" (one phrase

we used in *Maghee*, 573 N.W.2d at 6) could include a decision to plead guilty.

Several other courts have examined this issue under their own rules or as a constitutional matter. The Mississippi Supreme Court recently decided two indictment-amendment cases under its own rule governing amendments. *See Gowdy v. State*, 56 So. 3d 540, 545 (Miss. 2010) (noting that Mississippi's rule states "[a]mendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised" (citation omitted)). In *Gowdy*, the defendant was indicted for felony driving under the influence as his fourth such offense within a period of five years. *Id.* at 542. After the jury reached a guilty verdict, and just before sentencing, the trial judge permitted the State to amend the indictment, adding habitual offender status.[1] *Id.* The court sentenced Gowdy to life imprisonment without parole, and he appealed the timing of the habitual offender enhancement. *Id.*

The Mississippi Supreme Court interpreted the "unfair surprise" restriction to mean "that the defendant must be afforded due process of law and be given fair notice of 'the nature and cause of the accusation.' " *Id.* at 545 (citations omitted). The problem with the late amendment lay in its effect on the defendant's ability to enter an informed plea. *Id.* at 546. As the court explained:

> [N]otice of the charge includes notice of the applicable minimum and maximum penalties. . . . [B]efore a defendant can plead guilty, the trial court has a duty to ensure that he understands the nature and consequences of the plea, and

---

[1]Mississippi's rule, unlike Iowa's, does not limit amendments to "before or during the trial." *Cf.* Iowa R. Crim. P. 2.4(8), *with* Miss. Unif. Cir. & County Ct. R. (URCCC) 7.09. Thus, the amendment in *Gowdy* was not invalid merely because it came after the jury's verdict.

> the maximum and minimum penalties provided by law. The rule should not be different for defendants who choose to exercise their right to trial by jury.

*Id.* (internal citation and quotation marks omitted). Accordingly, the court found that the State should not have been allowed to amend the indictment. *Id.*

Two years later, the Mississippi Supreme Court heard another case in which the State had amended an indictment before trial to add an allegation of habitual offender status. *McCain v. State*, 81 So. 3d 1055 (Miss. 2012). A majority of the court agreed that the amendment was proper, because the defendant, unlike Gowdy, *did* have notice of the State's intention to seek habitual offender status. *Id.* at 1061; *id.* at 1063 (Dickinson, P.J., concurring in result only). A key difference, the court noted, was that "during [the] plea negotiations, the State disclosed its intention to introduce McCain's prior . . . convictions at trial." *Id.* at 1061. Such notice, the plurality noted, negated the unfair surprise claim under Mississippi's rule on amending indictments. *Id.* McCain was able to enter an intelligent plea, whereas Gowdy had not been.

In *People v. Valladoli*, 918 P.2d 999, 1010 (Cal. 1996), the California Supreme Court considered an amendment similar to the one here, albeit in the context of due process. The court employed the following standard: "Due process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial." *Id.* at 1009 (citation and internal quotation marks omitted).

The court held there was no due process violation merely because the statute allowed the state to add prior felony convictions to its charges after a verdict but before sentencing. *Id.* Critically, in that case it was

clear the defendant knew the state's intention at the outset. *Id.* at 1009–10 ("[T]he record reveals defendant was not actually surprised by the new charges."). Of particular aid to the court was an on-record discussion by the defendant's attorney, stating, "I'm not saying I didn't have notice or anything of that nature . . . I would never try to mislead the court and suggest that there was any surprise in this case." *Id.* at 1010 (internal quotation marks omitted). Indeed, the court took care to note that "nothing in this case suggests the prosecution intentionally held back the prior felony conviction allegations to gain some tactical advantage, or that the delay had a detrimental impact on *defendant's decision to accept an offered plea.*" *Id.* at 1010 (emphasis added).

The Supreme Court of Arizona, under the due process framework, also focused on defendant's knowledge of the State's intentions prior to trial. *State v. Noriega*, 690 P.2d 775, 784 (Ariz. 1984) (finding no "surprise or prejudice" in the State's amendment of the indictment to cite to the correct statutory provision authorizing an enhanced penalty, because "[t]he prosecutor made two statements on the record before trial that indicated his intent to seek the enhanced penalty" and that "both attorneys proceeded to trial on this basis"), *overruled on other grounds by State v. Burge*, 804 P.2d 754 (Ariz. 1990); *see also Duke v. State*, 587 S.W.2d 570, 571 (Ark. 1979) (rejecting the defendant's argument that he was prejudiced because he did not learn of an amendment to the information alleging he was a habitual offender until after the jury had been selected on the main case in part because the defendant had been told during plea negotiations that habitual criminal charges would be filed against him if he did not enter a plea of guilty); *Luna v. Commonwealth*, 571 S.W.2d 88, 89 (Ky. Ct. App. 1977) (rejecting defendant's challenge to an indictment amendment adding habitual

offender status and finding his substantial rights were not prejudiced because "the appellant turned down a one year [plea] offer from the Commonwealth before trial").

In a South Dakota Supreme Court case, the state originally filed an indictment and a supplemental allegation that the defendant was a habitual offender. *State v. Alexander*, 313 N.W.2d 33, 34 (S.D. 1981). The state later amended its indictment, but inadvertently omitted a supplemental allegation on the habitual offender status. *Id.* The court held there was no error in sentencing the defendant as a habitual offender.

> At the time of the arraignment on the amended indictment appellant was aware that the State claimed that the supplemental information was still on file, and he was fully advised by the court of the maximum possible punishment thereunder. He indicated that he was aware of and understood the same.

*Alexander*, 313 N.W.2d at 37. In other words, the defendant knew what punishment the State sought by the time he entered his plea.

Consistent with these authorities, we hold that amending the information during trial to add an enhancement can prejudice "substantial rights of the defendant"—if the defendant had no prior notice of the State's plan to amend and would have pled guilty had he or she known of that plan before trial. Our conclusion is based on interpretation of rule 2.4(8), without reaching the question whether due process or some other constitutional provision requires the same result. At the same time, we decline to adopt the position, seemingly urged by Brothern, that due process prohibits *any* amendment of the information to add an enhancement once trial begins.

We turn now to whether Brothern's trial counsel breached an essential duty in failing to oppose an amendment that prejudiced

Brothern's substantial rights. Here, the record is clear that Brothern had notice of the State's intention to prosecute him under the felony assault enhancement of section 708.2A(4). The preamendment trial information, although it cited the wrong code section, said "Class D Felony" and used the term "ENHANCED." Following that, the information enumerated Brothern's two previous domestic abuse assault convictions, which were necessary to convict him of the class "D" felony. The State's original minutes of testimony also revealed its intent to prosecute Brothern for enhanced domestic abuse assault. The minutes disclosed that the State planned to present testimony establishing Brothern's two domestic abuse assault convictions. In reality, the only thing omitted from the first version of count I was a citation to the right Code section. *See State v. Brisco*, 816 N.W.2d 415, 420–21 (Iowa Ct. App. 2012) (holding that the district court should not have dismissed an amended information for violation of the speedy indictment rule where the amendment was needed only to correct a misstatement as to the type of controlled substance and the applicable statutory subparagraph, and the defendant was on notice as to the substance of the charge).

The habitual offender enhancement presents a somewhat different issue. The original trial information did not mention Brothern's extortion and prohibited acts convictions, which were necessary to establish habitual offender status. Nor did the original minutes of testimony refer to those convictions. (The State filed additional minutes after it was allowed to amend the information.) At the posttrial hearing, no one contested the prosecutor's statement that Brothern's prior counsel had been advised "we were going to file the habitual" if Brothern turned down the State's pretrial plea offer. Yet Brothern's prior counsel was not present at the hearing to offer his version of events.

Brothern does not claim that the absence of habitual offender allegations from the trial information affected his *trial* strategy in the main case. In addition, Brothern had ample opportunity to prepare to deal with those allegations before the subsequent trial on his habitual offender status. Almost six weeks elapsed between the trial on the assault domestic abuse charges and the scheduled trial on the enhancements.

However, for the reasons previously stated, Brothern also had a right rooted in rule 2.4(8) to know whether he was going to face a habitual offender enhancement if he did not plead guilty and instead went to trial. The present record is insufficient for us to determine whether Brothern had that notice. All we have at this point is the prosecutor's professional statement to the court. The district court did not consider that statement because, in that court's view, it was determinative that the enhancement did not involve "a wholly new or different offense." That construes rule 2.4(8) too narrowly, because the rule imposes a separate requirement that the amendment not prejudice substantial rights of the defendant.

Accordingly, we affirm Brothern's conviction and sentence, but we do so without foreclosing Brothern from filing an application for postconviction relief alleging he received ineffective assistance of counsel at trial when his attorney failed to object to the State's motion to amend count I to add the habitual offender enhancement. To succeed on such an application, Brothern would have to show at a minimum that his counsel had not received notice of the State's intent to seek that enhancement if he went to trial. Brothern would also have to show that he would have pled guilty if notice had been provided. As we have already pointed out, the late amendment could not have affected

Brothern's trial strategy, only his plea strategy, so there would be no prejudice to Brothern if he would have gone to trial anyway.[2]

**IV. Conclusion.**

For the foregoing reasons, we affirm the judgment of the district court and vacate the decision of the court of appeals.

**COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except Zager, J., and Cady, C.J., who concur in part and dissent in part.

---

[2]Our decision also does not foreclose a possible claim that Brothern received ineffective assistance during plea negotiations, if his counsel had been told of the State's plans to seek an enhancement but failed to pass this information along to his client.

**ZAGER, Justice (concurring in part and dissenting in part).**

While I agree with the decision reached by the majority in affirming the district court, I write separately to voice my disagreement with the conclusion that there may be circumstances when a timely filed amendment to add an habitual offender sentencing enhancement should not be allowed. I specifically object to the notion that the substantial rights of the defendant can be prejudiced depending on whether the defendant had prior notice that an habitual offender enhancement might be filed. Consistent with *State v. Bruce*, the State timely filed its motion to amend the trial information to add the habitual offender sentencing enhancement. *See State v. Bruce*, 795 N.W.2d 1, 3 (Iowa 2011) ("Absent a specific definition in the statute or rule, we believe the phrase 'during the trial' means the period of time in which the trier of fact hears evidence and makes a decision based on that evidence."). As correctly noted by the court of appeals, it is axiomatic that habitual offender statutes do not charge a separate offense or create a crime. *State v. Brothern*, No. 10–0319, 2012 WL 5601097, at 2 (Iowa Ct. App. Nov. 15, 2012) (citing *State v. Woody*, 613 N.W.2d 215, 217 (Iowa 2000)). Rather, they merely enhance punishment on the current offense. *Id.* Trial counsel was not ineffective for failing to object to the timely amendment.

Additionally, Brothern does not and cannot claim that this amendment prejudiced his substantial rights because it created such surprise that he had to change his trial strategy to meet the amendment. *See State v. Maghee*, 573 N.W.2d 1, 6 (Iowa 1997). ("An amendment prejudices the substantial rights of the defendant if it creates such surprise that the defendant would have to change trial strategy to meet the charge in the amended information." His trial strategy was always to

deny he committed the domestic assault. The amendment created neither surprise nor necessitated a change in trial strategy.

I would simply conclude that trial counsel did not breach an essential duty by failing to object to the amendment to the trial information to add the habitual offender sentencing enhancement when the motion was timely filed. Any objection to the proposed amendment would have been without merit. I would deny Brothern's claim of ineffective assistance of counsel for trial counsel not objecting to the amendment and leave it to postconviction proceedings to sort out any claim that trial counsel failed to advise Brothern during plea negotiations that the State could amend the trial information.

Cady, C.J., joins this concurrence in part and dissent in part.