# IN THE COURT OF APPEALS OF IOWA

No. 16-1828
Filed April 18, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**CHARLES EARL JONES,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, David P. Odekirk, Judge.

        Defendant challenges his convictions for robbery in the first degree, going armed with intent, carrying weapons, and making a false report to law enforcement.  **AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Martha J. Lucey, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee.

        Heard by Doyle, P.J., and Tabor and McDonald, JJ.

**MCDONALD, Judge.**

Charles Jones was convicted of robbery in the first degree, in violation of Iowa Code section 711.2 (2016), going armed with intent, in violation of Iowa Code section 708.8, carrying weapons, in violation of Iowa Code section 724.4, and making a false report to law enforcement, in violation of Iowa Code section 718.6. In this appeal, Jones challenges the sufficiency of the evidence supporting his convictions, alleges trial counsel provided constitutionally deficient representation in several respects, and contends the district court applied the wrong legal standard in denying his motion for new trial.

I.

This case arises out of the robbery of a convenience store in Waterloo. On the evening of November 18, 2016, at approximately 9:38 p.m., a man robbed a convenience store at gunpoint. The robber wore a hooded sweatshirt, and his face was covered. During the course of the robbery—lasting but a minute—the store manager and the robber exchanged gunfire. The robber subsequently fled the scene.

Law enforcement arrived quickly at the convenience store in response to a silent alarm. The store manager told the officers he did not get a good look at the robber. The manager described the robber as a light-skinned black man approximately 5'8" to 6' tall. Investigator Nicholas Sadd was familiar with the store and knew the store had surveillance cameras. He requested to view the surveillance footage. Upon reviewing the footage, Investigator Sadd noted the suspect wore a black hooded sweatshirt, blue boxers, a black belt with white discoloration, faded blue jeans, and white or black sneakers. Investigator Sadd

and other officers also observed the robber may have been shot during the exchange of gunfire. The officers' belief the suspect may have been shot was based on the suspect's movement, reaction, and immediate withdrawal from the store. However, there was no blood at the scene. Officers recovered several bullet casings and bullets from the scene. Several came from the store manager's .380 caliber handgun, and others were from a 9mm handgun. Based on the surveillance video, police believed the suspect may have left a palm print or fingerprint at the scene. The surveillance video showed there were two glass doors at the front of the store. One of the doors was locked. When the robber exited the store, he first tried to push open the locked door with his hand. Finding the door locked, the robber then exited through the second, unlocked door.

At 9:54 pm, approximately fifteen minutes after the robbery, officers received a call from dispatch regarding a reported shooting at nearby Eighth and Leavitt Streets. The site of the reported shooting was a five- to ten-minute drive from the convenience store. Several officers left the convenience store to respond to the call. They found a man, Charles Jones, on the ground. Jones told officers a black male with dreadlocks came up behind him, held a gun to him, and stole his headphones, cellphone, and coat. Jones told police he was shot during the struggle over the coat. The injury was in the right armpit area. Jones was wearing a white basketball jersey, faded jeans, a belt with white discoloration, and blue boxers. Jones was taken to the hospital for treatment. Officers remained behind to process the scene. They found no bullets, casings, blood, or signs of a struggle. Several witnesses described hearing three to four gunshots, but no one witnessed the reported robbery. Two witnesses reported seeing a man in a white shirt run or

walk away from the scene and get into a car. Neither witness saw the man carrying a gun or headphones.

The officers fairly quickly tumbled to the conclusion Jones was the robber. They spoke with Jones at the hospital. Jones told officers he had been either at his girlfriend's house or his parent's house and then had visited the home of a family friend he referred to as "Mama Poo." After leaving Mama Poo's house, Jones walked to Irving Middle School to try and access the school's Wi-Fi network to stream music on his phone. Jones told officers he walked around the building but was unable to access the school's Wi-Fi network. He left the school and walked to a friend's apartment, but his friend was not home. According to Jones, he began walking home while listening to his music. He told officers he was accosted near Eighth and Leavitt while on his way home. Officers asked Jones whether they could perform a gunshot residue test of his hands. Jones told the officers he would have powder on his hands from wrestling with his assailant over the coat. The officers told him they still wanted to proceed with the test. In response, Jones told the officers he would have residue on his hands because he had fired guns the previous day in Cedar Falls. Jones claimed he met a man, who he knew only as John, in a bar. According to Jones, the two left the bar to smoke marijuana and shoot guns into the grass near John's home. Jones told the officers he had not bathed or washed his hands since that time, nearly twenty-four hours prior. Based on Jones's admission he would have gun powder residue on his hands, the officers decided against conducting the test.

The officers continued to investigate the matter. Upon questioning, Mama Poo could not remember Jones being at her house on the night in question,

although she admitted she has memory loss stemming from an injury. Officers obtained surveillance video from Irving Middle School. The surveillance video from the middle school did not show Jones at the school on the night in question. The officers spoke to Jones's girlfriend. Jones told the officers his girlfriend had purchased the now-allegedly stolen headphones for him. Jones's girlfriend did not corroborate that she bought Jones the headphones. The police developed a palm print from the spot on the locked glass door where the robber put his hand. The palm print matched Jones.

Jones was arrested and charged in connection with the robbery. A jury found him guilty as charged. He was sentenced to indeterminate terms of incarceration not to exceed twenty-five years for robbery, five years for going armed with intent, two years for carrying weapons, and thirty days for making a false report, said sentences to be served concurrently.

II.

Jones's first challenges the sufficiency of the evidence supporting the four convictions. Specifically, Jones contends there is not sufficient evidence of identity to support the convictions for robbery in the first degree, going armed with intent, and carrying weapons. Relatedly, he contends if there was insufficient evidence he was the robber of the convenience store, then there is also insufficient evidence to establish he made a false report of being robbed.

The standard of review is well-established. This court will affirm the jury's verdict if substantial record evidence supports it. *See State v. Webb*, 648 N.W.2d 72, 75 (Iowa 2002). "Evidence is substantial if it would convince a rational fact finder that the defendant is guilty beyond a reasonable doubt." *Id.* at 75–76. When

reviewing for the sufficiency of the evidence, this court views the evidence in the light most favorable to the State but considers all evidence in the record. *Id.* at 76. "The State must prove every fact necessary to constitute the crime with which the defendant is charged. The evidence must raise a fair inference of guilt and do more than create speculation, suspicion, or conjecture." *Id.* (internal citations omitted).

The State contends error was not preserved with respect to count four, making a false report to law enforcement, because the defendant did not specifically challenge the relevant elements. "[I]n order to preserve error on a motion to acquit, the defendant must specifically identify the elements for which there was insufficient evidence." *State v. Schories*, 827 N.W.2d 659, 664 (Iowa 2013). However, "the question of preservation hardly matters because [appellant] may raise the issue through a claim of ineffective assistance of counsel. It would surely be ineffective under the standards announced in *Strickland v. Washington*, 466 U.S. 668 (1984), if [] counsel failed to preserve a valid motion for acquittal based on the State's lack of substantial evidence tending to []prove the elements." *Id.* Here, the defendant raises his claim within an ineffective-assistance framework, and we address the claim on the merits.

When the evidence is viewed in the light most favorable to the jury's verdict, there is substantial evidence in support of the convictions. High quality surveillance video was obtained from the convenience store. The video showed the robber wore blue boxer shorts, faded jeans, and a belt with white discoloration. Officers testified the video showed the store manager shot the robber in an area near the right armpit. The officers' testimony was based on their observation of

the surveillance footage that showed the robber had his right arm extended while firing his weapon and then suddenly recoiled and quickly fled the scene during the gunfight. The video also showed the suspect placed his hand on a glass door while attempting to flee the scene. Investigators obtained a palm print from the same spot, and the print matched Jones's palm print. Jones was found fifteen minutes after the robbery, only a short distance from the convenience store. He was wearing blue boxer shorts, faded jeans, and a belt with white discoloration marks consistent with that shown in the surveillance video. One officer testified regarding his experience with suspects changing clothes after committing a crime, testifying it was easier for a suspect to change his or her shirt rather than his or her underwear and jeans. Jones had a gunshot wound in his right armpit area. Investigator Sadd testified it would be difficult for Jones to have been shot in the armpit area if Jones's story were true. Local hospitals also did not report treating any other victim of a gunshot wound on the night in question. There was no evidence of casings, blood, or a struggle at Eighth and Leavitt. There were no witnesses to Jones being attacked, only to the sound of gunshots. Surveillance video from the school did not corroborate Jones's version of events on the night in question.

"Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence and credit other evidence." *State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006). The jury was free to disbelieve Jones's version of events and conclude he committed the robbery and filed a police report to cover up the actual cause of his injury. We will not disturb the jury's verdict on this record.

III.

Between his appellate brief and pro se brief, Jones raises seven claims of ineffective assistance of counsel. We review de novo claims of ineffective assistance of counsel. *See Everett v. State*, 789 N.W.2d 151, 155 (Iowa 2010). To succeed on an ineffective-assistance claim a defendant must show "(1) counsel failed to perform an essential duty; and (2) prejudice resulted." *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). With respect to the first element, "we measure counsel's performance against the standard of a reasonably competent practitioner." *Id.* Poor strategy or mistakes in judgment normally do not rise to the level of ineffective assistance. *See Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2001). "The failure of trial counsel to preserve error at trial can support an ineffective assistance of counsel claim." *State v. Truesdell*, 679 N.W.2d 611, 615–16 (Iowa 2004). With respect to prejudice, the defendant must prove "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. It is not enough that the applicant show the error had only some effect on the outcome, as nearly any act or omission by counsel results in some change to the outcome one way or another, but not necessarily in a way that would undermine its reliability. *See id.* at 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "If the claim lacks prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently." *Ledezma*, 626 N.W.2d at 142.

A.

We first address whether the defendant has proved a breach of a constitutional duty.

1.

In his first claim, Jones argues his trial counsel was ineffective in failing to object to certain officers' testimony regarding their observations drawn from the surveillance video while the video was being played for the jury and regarding their observations drawn from still photographs taken from the surveillance video. The officers' testimony was relevant to establish the officers' conclusions the robber had been shot during the course of the robbery and explain why they were suspicious of Jones's report. Despite this, Jones contends the testimony was improper narration and improper lay opinion testimony in violation of Iowa Rule of Evidence 5.701. In support of his argument, the defendant relies on federal cases in which certain courts have disallowed this type of lay opinion evidence. *See United States v. Grinage*, 390 F.2d 746, 751 (2nd Cir. 2004) (disallowing this type of evidence); *but see United States v. El-Mezain*, 664 F.3d 467, 513–14 (5th Cir. 2011) (allowing the use of such evidence).

We cannot conclude defense counsel breached an essential duty in failing to object to the testimony. First, the federal cases are inapplicable here. The federal cases relate to the allowable scope of testimony for a witness not disclosed as an expert witness pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G). The federal cases turn on whether the testimony was expert opinion not previously disclosed or lay opinion not subject to pretrial disclosure. Iowa does not have similar pretrial disclosure rules drawing such sharp distinctions. Here, the opinion

testimony was permissible lay opinion or permissible expert opinion based on the officers' training and experience. Second, the officers' testimony regarding their observations from the video had independent relevance to explain their investigation of Jones following his report of being robbed. Counsel had no duty to interpose a non-meritorious objection. *See State v. Brothern*, 832 N.W.2d 187, 192 (Iowa 2013).

2.

In his second claim, Jones argues his counsel was ineffective in failing to object to Officer Lippert's testimony regarding his experience with people "being dropped off after being shot" to "avoid a connection between an incident and the gunshot wound itself" and testimony regarding suspects changing their clothing to hide their participation in a crime. It is not clear on what basis Jones believes the testimony was inadmissible.

The evidence was relevant. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R. Evid. 5.401. Officer Lippert testified regarding his training and experience in these areas. The testimony shed light on why Jones was wearing a different shirt and shoes when police responded to the reported shooting. The testimony also showed why a suspect might prefer to stage an incident and call for help rather than going to the hospital for treatment.

There is also no basis for excluding the testimony. Even if evidence is relevant, it may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or

by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Iowa R. Evid. 5.403. "Rule 403 allows the trier of fact to exclude relevant evidence. Because it does so, courts should apply the rule sparingly." *Williams v. Hedican*, 561 N.W.2d 817, 832 (Iowa 1997). There is no showing Officer Lippert's testimony created unfair prejudice, confused the issues, or misled the jury.

Jones's claim lacks merit. "We will not find counsel incompetent for failing to pursue a meritless issue." *Brothern*, 832 N.W.2d at 192. This claim does not entitle Jones to any relief.

3.

Jones's third claim arises out of counsel's failure to seek to exclude hearsay testimony. First, Jones points to counsel's failure to move to strike after a sustained hearsay objection. Second, Jones argues counsel failed to object to what he contends was backdoor hearsay. The testimony was as follows:

> Prosecutor: And were you able to ever confirm with Murphy Straight that she had ever given the defendant any Beats by Dre headphones? Investigator Sadd: Later on in the investigation, I ask her if she had ever given him the headphones and she stated no.
> Defense Counsel: I'm going to object, Your Honor, calling for hearsay.
> The Court: I'm going to sustain the objection.

Later the prosecutor asked the following of another witness, Officer Lippert:

> Prosecutor: Were you ever able to confirm or find any confirmation that the defendant owned any Beats by Dre [headphones] or any Pelle Pelle coat? Lippert: Yes
> Prosecutor: And specifically were you able to confirm whether he actually owned Beats by Dre? Lippert: I was not able to.
> Prosecutor: And did you attempt to speak to his girlfriend and other people? Lippert: Yes.
> Prosecutor: And did you, in fact, speak to his girlfriend? Lippert: Yes.

Prosecutor: And did you ever – were you ever able to confirm whether the defendant ever owned a Pelle Pelle coat or find any evidence that he ever owned a Pelle Pelle coat? And I may be butchering the name. Lippert: I was not able to.

Prosecutor: And did you speak to the girlfriend about that? Lippert: Yes.

We conclude the record is insufficient to resolve this claim on the merits. We preserve this claim for further development in post-conviction relief proceedings. *See State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006) ("If an ineffective-assistance-of-counsel claim is raised on direct appeal from the criminal proceedings, we may decide the record is adequate to decide the claim or may choose to preserve the claim for postconviction proceedings.").

4.

In his fourth claim, Jones argues his counsel should have moved to sever trial on his charges. Jones does not identify or explain on what ground or grounds counsel should have sought to sever charges that involve the same underlying conduct. *See* Iowa R. Crim. P. 2.6(1). He does not point to any evidence that would have been inadmissible on one count but was heard by the jury when the charges were tried together. "We will not find counsel incompetent for failing to pursue a meritless issue." *Brothern*, 832 N.W.2d at 192. Jones has failed to establish a breach of duty, and he is not entitled to any relief.

5.

Jones's fifth ineffective-assistance-of-counsel claim is his counsel should have argued that his convictions for going armed with intent and carrying weapons

merge into his conviction for robbery in the first degree.  At issue is the following statute:

> No person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted. If the jury returns a verdict of guilty of more than one offense and such verdict conflicts with this section, the court shall enter judgment of guilty of the greater of the offenses only.

Iowa Code § 701.9.  The purpose of the merger statute is to prevent a court from imposing a greater punishment than that contemplated by the legislature.  *See State v. Lambert*, 612 N.W.2d 810, 815 (Iowa 2000).  We review merger challenges under section 701.9 for correction of legal error.  *See State v. Belken*, 633 N.W.2d 786, 794 (Iowa 2001); Iowa R. App. P. 6.907.

We first address Jones's claim his conviction for going armed with intent merges with his conviction for robbery in the first degree.  To address claims based on merger "we compare the elements of the two offenses to determine whether it is possible to commit the greater offense without also committing the lesser offense."  *State v. Halliburton*, 539 N.W.2d 339, 344 (Iowa 1995).

When we compare the elements, it is clear the offenses have different elements.  Here, the marshaling instruction for robbery in the first degree provided the State had to prove, among other things, Jones was armed with a dangerous weapon.  The marshaling instruction for going armed with intent provided the State had to prove, among other things, Jones had the specific intent to use a firearm against another person.  This court has already concluded these differing elements preclude merger.  *See State v. Ramirez*, No. 14-1172, 2015 WL 4468855, at *3 (Iowa Ct. App. July 22, 2015) ("Based on these elements, going armed with intent is not a lesser-included offense of first-degree robbery.  A defendant can commit

first-degree robbery without being guilty of going armed with intent.  Specifically, first-degree robbery does not contain the element of intent to actually use a weapon against another, unlike the crime of going armed with intent.").  We see no reason to deviate from our prior panel opinion.

Similarly, we conclude the conviction for carrying weapons does not merge with robbery in the first degree.  To be convicted of carrying weapons, the jury was instructed the State had to prove "the firearm was concealed on or about the defendant's person."  Concealment is not an element of robbery.  It is possible to commit robbery in the first degree without also committing the offense of carrying weapons.  Thus, the convictions do not merge under section 701.9.

Because the elements test shows neither of the challenged convictions merges into the conviction for robbery in the first degree, we need not address the question of whether the legislature intended multiple punishments for the offenses. *See Halliburton*, 539 N.W.2d at 344.  Counsel had no duty to pursue these meritless issues.  *See Brothern*, 832 N.W.2d at 192.

6.

Sixth, Jones contends counsel was ineffective for failing to challenge the chain of custody of the palm print evidence.  The basis for Jones's claim is that a crime lab officer went on vacation between the time he developed the palm print from the glass door and the time the palm print was turned over to the DCI lab for processing.

Jones's counsel did not breach a duty in failing to challenge the chain of custody for the palm print evidence.  Officer Morely testified regarding the process and procedure used to collect and develop the palm print evidence.  He testified

the palm print evidence was secured by Officer Jody Stratton in Morely's absence. Stratton testified regarding the process of securing the evidence and transmitting the evidence to the DCI lab in accord with standard procedures to maintain the integrity of the evidence. DCI criminalist Steve Tvrdik testified he received the print and tested it in accord with established processes and procedures. This is sufficient to satisfy our test that "[t]he level of custody required is that which mak(es) it reasonably probable that tampering, substitution or alteration . . . did not occur." *State v. Langlet*, 283 N.W.2d 330, 336 (Iowa 1979). Under the circumstances, counsel had no duty to raise this issue.

7.

In his final claim, Jones alleges his trial counsel was ineffective in failing to object to two instances of prosecutorial misconduct during closing argument. Because Jones claims prosecutorial misconduct, "he must show the prosecutor acted with reckless disregard of this duty or intentionally made statements in violation of an obvious obligation, legal standard, or applicable rule that went beyond an exercise of poor judgment." *State v. Coleman*, 907 N.W.2d 124, 139 (Iowa 2018). We have reviewed Jones's claims, and we find them to be without merit. The challenged statements were supported by the evidence and material to the issues. This claim is undeveloped, and does not entitle Jones to any relief.

B.

Jones claims the cumulative effect of the alleged errors undermines confidence in the outcome of the proceeding. Specifically, he argues, "Even where a trial attorney's errors may not individually amount to ineffective assistance of counsel, the cumulative effect of multiple errors may make out a Sixth Amendment

violation." In support of his argument, Jones relies on *State v. Clay*, 824 N.W.2d 488, 501 (Iowa 2012). In many cases, appellants cite *Clay* for the proposition that a defendant can establish cumulative prejudice to prove a Sixth Amendment violation. However, the holding of *Clay* is not as broad as this defendant or many defendants make it out to be.

In *Clay*, the supreme court established a framework to analyze multiple claims of ineffective assistance of counsel. The *Clay* court was clear where "the defendant raises one or more claims of ineffective assistance of counsel, and the court finds that trial counsel performed an essential duty in an individual claim, the court should dismiss that claim." *Id.* Thus, it is incorrect to state a defendant can establish a Sixth Amendment violation by showing there was cumulative prejudice arising out of multiple claims not involving a breach of an essential duty. If there is no showing of a breach of an essential duty, the claim is dismissed without further consideration. *See id.* The *Clay* court instructed that a court should consider cumulative prejudice only when the court "analyzes the prejudice prong of *Strickland* without considering trial counsel's failure to perform an essential duty." *Id.* at 501–02. In other words, according to *Clay*, when the court is assessing multiple claims and assumes without deciding counsel breached an essential duty, then the reviewing court should consider whether the assumed breaches, cumulatively, resulted in *Strickland* prejudice. *See id.*

In this case, we have concluded Jones has failed to establish the breach of an essential duty with respect to six of the seven claims urged on appeal. Pursuant to *Clay*, the defendant is not entitled to relief on any of these claims, and the cumulative-prejudice analysis is inapplicable to those claims. *See id.* We have

preserved the hearsay claim for further development in potential post-conviction relief proceedings.

IV.

In his final claim of error, Jones argues the district court applied the wrong legal standard in resolving Jones's pro se motion for new trial. The motion was asserted at the time of sentencing when Jones provided a lengthy and convoluted response to the district court's inquiry whether Jones knew of any legal reason the court should not impose judgment. The court responded:

> Mr. Jones, in listening to your statements, I do treat them as a pro se motion in arrest of judgment or a motion for new trial, even though they're not brought by your attorney.
> . . . .
> I have considered them in light of the record as a whole and I will deny the motions that I, again, will treat as having been made by you on the record just now. I do believe that when the record is viewed as a whole, it does support the verdicts that have been rendered and that the evidence was sufficient to support the jury's conclusions in this case.

The appropriate standard for a new trial motion based on a lack of evidence is weight of the evidence, not sufficiency of the evidence. *See State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998).

> On a motion for judgment of acquittal, the court is required to approach the evidence from a standpoint most favorable to the government, and to assume the truth of the evidence offered by the prosecution. If on this basis there is substantial evidence justifying an inference of guilt, the motion for acquittal must be denied.
> On a motion for new trial, however, the power of the court is much broader. It may weigh the evidence and consider the credibility of witnesses. If the court reaches the conclusion that the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted, the verdict may be set aside and a new trial granted.
> . . . The motion [for new trial] is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial on this ground should be invoked only in exceptional

cases in which the evidence preponderates heavily against the verdict.

*Id.* at 658–59 (quoting 3 Charles A. Wright, Federal Practice and Procedure § 553, 245-48 (2d ed. 1982)).

We cannot conclude the district court committed reversible error under the circumstances presented. Jones provided a long response to the district court's question on whether there was a reason judgment could not be imposed, and it was not entirely clear whether Jones was making any motion or the basis for any such motion. The district court respectfully acknowledged Jones's response and did its best to construe a motion and argument from Jones's statement. In ruling on the motion and argument it constructed on the defendant's behalf, the district court appeared to be considering the weight of the evidence. The district gave no indication it was considering the evidence in the light most favorable to the State or the verdict, the key distinction in *Ellis*. *See id.* at 658. The court viewed the record "as a whole" and concluded the evidence supported the verdicts. As in *State v. Robinson*, No. 16-1151, 2017 WL 706355, at *2 (Iowa Ct. App. Feb. 22, 2017), it appears Jones "reads too much into the court's use of the word 'sufficient'", without more, to make his argument. We conclude the district court did not err in ruling on the new trial motion.

V.

In light of the foregoing, we affirm the judgment of the district court in all respects.

**AFFIRMED.**